**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TONY A. GATES ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06 C 6359 |
| v. ) | |
| ) | Magistrate Judge Nan R. Nolan |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Tony A. Gates appeals from an ALJ's decision denying him social security disability benefits. Because the ALJ's decision was not supported by substantial evidence, the denial of benefits is reversed, and this case is remanded for further proceedings consistent with this Opinion.

**I.     Background**

Mr. Gates claims to have become totally disabled on May 1, 2003 because of pain in his shoulders and back, problems with his sinuses, and headaches. Mr. Gates was born on November 29, 1957. He has a history of a severe headaches, mild degenerative changes in the thoracic vertebrae, a moderate shoulder joint separation, tendonopathy in his left shoulder, hyperventilation syndrome, and a skin condition thought to be PLEVA or Grover's Disease. Mr. Gates may also have suffered a non-Q myocardial infarction on July 27, 2004. Mr. Gates says that he can walk a half a block, lift and carry a gallon of milk, and sometimes sit for two hours without having to get up. Mr. Gates washes dishes, vacuums, and occasionally does laundry and cooks. Mr. Gates has a GED and has worked many jobs including livery driver, office work, compounder, data entry, loader, stock clerk, package sorter and machine

operator.

The ALJ applied the five-step analysis used to evaluate disability and found that Mr. Gates had not engaged in substantial gainful activity at any time relevant to the decision (Step One); his status post non "Q" wave infarction with angioplasty and one stent placement, low back pain, cluster headaches, and chronic left shoulder pain are a severe combination of impairments (Step Two); but that they do not qualify as a listed impairment (Step Three). The ALJ determined that Mr. Gates retained the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for about six hours in a workday; sit for about six hours; push and pull 20 pounds; use his left upper extremity two thirds of the workday for reaching; miss one day per month of work secondary to low back pain and headaches; needs a sit/stand option where he can alternate positions at least one time per hour; and needs to avoid temperature extremes secondary to his heart condition and avoid dust, chemicals, and fumes secondary to his heart problems and headaches. Given his RFC, the ALJ concluded that Mr. Gates was able to perform his past relevant work as a general office clerk (Step Four).

## II.     Discussion

Mr. Gates challenges the ALJ's decision at Steps 3 and 4 as not supported by substantial evidence. Several of Mr. Gates' Step 4 arguments have merit, and a reversal and remand is required.

### A.     Step Three

Mr. Gates challenges the ALJ's finding at Step 3 that his impairments do not meet or equal a listed impairment. "The Listing describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing." Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999). "In considering whether

a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004). "[W]here an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004).

The ALJ's finding at Step 3 is supported by substantial evidence. See Rice, 384 F.3d at 370 n.5 (noting that it is appropriate to review the ALJ's decision as a whole in considering the ALJ's determination at Step 3). At Step 3 of his analysis, the ALJ specified the relevant listings: Listings 1.02 (major dysfunction of a joint due to any cause), 1.04 (disorders of the spine), and 4.04 (ischemic heart disease). Mr. Gates does not argue than any other listing is applicable to him.

Mr. Gates contends that the ALJ did not consider the combination of all of his impairments in considering medical equivalence because he did not include his asthma, high cholesterol, hypertension, and hyperventilation syndrome in his finding of Mr. Gates' impairments. Although the ALJ did not explicitly recite all of Mr. Gates' aliments in his findings, the ALJ did note that Mr. Gates' blood pressure was "somewhat elevated at 140/85" on November 8, 2000 and that on September 7, 2004 a cardiologist opined that Mr. Gates suffers from hyperventilation syndrome. (R. 20, 21, 126, 205). The ALJ did not err in failing to mention Mr. Gates' asthma and high cholesterol because an ALJ need not provide a written evaluation of every piece of evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). Moreover, none of the evidence that Mr. Gates contends the ALJ ignored regarding his asthma (R. 210) and high cholesterol (R. 135, 203, 205) establishes that his impairments met or equal in severity the requirements of any listing. For example, Dr. Clark diagnosed Mr. Gates with mild asthma, and medication has been prescribed to him for high cholesterol. (R.

135, 203). There is no evidence that Mr. Gates' high cholesterol is not being controlled by medication. Mr. Gates bears the burden of demonstrating that his impairments meet a listing, and he has not specifically explained how his asthma, high cholesterol, hypertension, and hyperventilation syndrome in combination with his other impairments establishes that his impairments met or equal in severity the criteria under listings 1.02, 1.04, and 4.04. Maggard, 167 F.3d at 380 (claimant bears the burden at step 3).

The ALJ also properly relied on the state agency medical experts' findings that Mr. Gates could perform medium work and thus, his impairments did not meet or equal criteria of any listed impairment. (R. 22); Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004) (holding an ALJ may properly rely on the reports of state agency physicians at step three). Drs. Young-Ja Kim and Ernst Bone submitted "Disability Determination and Transmittal" forms on December 7, 2004 and March 24, 2005, respectively. Dr. Kim specifically noted diagnoses of hyperventilation syndrome, chronic acromioclavicular separation of the left shoulder, and degeneration of the left spine. (R. 202). The Disability Determination and Transmittal forms "conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." Scheck, 357 F.3d at 700.

Mr. Gates argues that the state agency physicians' lack of signatures on the "Disability Determination and Transmittal" forms dated December 7, 2004 and March 24, 2005 renders the record unclear as to who actually prepared the forms. (R. 24-27). The lack of signatures is harmless here because other contemporaneous reports by the state agency physicians confirm their findings that Mr. Gates did not meet or equal a listing. On November 18, 2004, Dr. Kim signed the Physical Residual Functional Capacity Assessment form in which he found Mr. Gates capable of performing medium work. (R. 195-202). On March 24, 2005, Dr. Bone

completed a Report of Contact in which he indicated that he had reviewed all the evidence in the file and that Dr. Kim's assessment of November 19, 2004 was affirmed. (R. 105). Given these additional reports of the state agency physicians, the Court has no trouble concluding that the state agency physicians considered the question of medical equivalence at the initial and reconsideration levels.

Mr. Gates also argues that Drs. Kim's and Bone's opinions are based on an incomplete record because the ALJ received medical records which post-date their opinions, including abnormal results of an MRI of Mr. Gates' left shoulder on April 4, 2005 and laboratory results on August 5, 2005. To the extent Mr. Gates is arguing that the ALJ should have sought an updated medical expert opinion regarding medical equivalence, that argument fails.

Social Security Ruling 96-6p states that an ALJ is required to obtain an updated medical opinion from a medical expert when "additional medical evidence" is received that in the opinion of the ALJ may change the state agency medical consultant's findings that the impairments are not equivalent in severity to a list impairment. After the state agency physicians opined that Mr. Gates did not have an impairment that met or equaled criteria of any listed impairment, Mr. Gates had an MRI of his left shoulder and blood work done. (R. 219-20; 227-32). The ALJ did not err in relying on the state agency physicians' findings at Step 3 and in failing to obtain an updated medical opinion regarding Mr. Gates' April 4, 2005 MRI and August 5, 2005 blood work which were unavailable for the state agency physicians to review. In his decision, the ALJ considered the results of the MRI of Mr. Gates' left shoulder when making his determination. The ALJ noted that an MRI of Mr. Gates' left shoulder performed on April 4, 2005 found "a focal area of high signal in supraspinatus tendon suggestive of tendonopathy." (R. 21). The ALJ further noted that diagnoses such as prior trauma, renal osteodystrophy, hyperparathyroidism, and rheumatoid arthritis could not be

ruled out." Id. The ALJ also discussed Mr. Gates' physician's notes of June 29, 2005. Id. On that date, Mr. Gates' physician indicated that Mr. Gates had good results with physical therapy on his left shoulder. (R. 21; 221). Mr. Gates' physician opined that Mr. Gates had "resolved left should pain." Id. With respect to his August 5, 2005 blood work, Mr. Gates has not explained the significance of these laboratory results and what they demonstrate about medical equivalence.

Mr. Gates fails to explain how the MRI and blood work results might have changed the state agency medical physicians' findings that Mr. Gates' impairments do not meet or equal criteria of any listed impairment. Nor has Mr. Gates explained why this updated medical evidence should have caused the ALJ to doubt the reliability of their findings. The ALJ's decision that the updated medical records would not have changed the state agency physicians' findings regarding equivalency is therefore supported by substantial evidence.

**B.     Residual Functional Capacity Assessment**

Mr. Gates next challenges the ALJ's finding that his low back pain and headaches would cause him to be absent from work only one day per month. (R. 20). Mr. Gates insists that the ALJ offered no support and no explanation for his determination that Mr. Gates would need to miss no more than one day per month because of his headaches and low back pain. Mr. Gates testified that he experiences headaches 2-3 times per week that cause him to be unable to function and sometimes they last all day. (R. 269). He explained that he must avoid noise by laying down and placing a pillow over his head. Id. Mr. Gates also said he experiences sharp pain in his back and cannot function or move two to three times a week. (R. 267-69; 278). The VE testified that if a person would miss work more than two days a month, no work would be available. (R. 283).

The ALJ did nor err in finding that Mr. Gates would miss one day per month of work

due to low back pain and headaches.  In essence, Mr. Gates argues that the ALJ erred in evaluating his testimony regarding his headaches and back pain, which was integral to assessing his RFC.  The ALJ did not ignore Mr. Gates' complaints.  Here, the ALJ found that Mr. Gates' allegations of disabling headaches and back pain only partially credible because of "significant inconsistencies" in the record.  (R. 22); see also SSR 96-7p (stating "[i]n making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements.  Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible.").  The ALJ accepted that Mr. Gates' impairments could reasonably be expected to produce the alleged symptoms, but found that Mr. Gates' statements concerning the intensity, duration and limiting effects of the symptoms was not entirely credible.  (R. 22)

In discrediting Mr. Gates' testimony regarding the frequency and severity of his headaches and back pain, the ALJ relied on several factors.  First, the ALJ noted Mr. Gates' lack of treatment efforts for his alleged debilitating headaches since Dr. Clark prescribed Zomig in June 2004.  (R. 21).  It was reasonable for the ALJ to conclude that the lack of subsequent treatment undermined Mr. Gates' reports of debilitating headaches 2-3 times per week.  SSR 96-7p (stating "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .").  The ALJ also discounted Mr. Gates' claim of debilitating headaches 2-3 times per week because of his inconsistent testimony at the hearing.  The ALJ asked Mr. Gates why he had not addressed the effectiveness of the pain medication with his doctor.  (R. 270).  Mr. Gates first stated that the wait time was too long.  (R. 270-71).  Then, he said he already has prescriptions from Dr. Clark.  (R. 272).  Finally, Mr. Gates testified that he was looking for a different doctor because

Dr. Clark was "not addressing the issues that [he was] dealing with as far coming to try to get disability." (R. 271).[1]

With respect to Mr. Gates' testimony regarding is back pain, the ALJ noted that there is no evidence in the record that Mr. Gates complained to his physician of such extreme, debilitating back pain. (R. 21). The ALJ further noted that an x-ray of Mr. Gates' lumbar spine reflected only minor degenerative changes and Mr. Gates had no symptoms of radiculopathy. (R. 21, 22). Finally, the ALJ discounted Mr. Gates' claim of disabling headaches and back pain because the state agency physicians found that Mr. Gates was able to perform medium work and had no limitations with respect to headaches and lower back pain. (R. 22). Substantial evidence supports the ALJ's conclusion that Mr. Gates does not suffer from headaches and back pain that would cause him to miss work more than two days per month. The Court therefore defers to the ALJ's decision to discount Mr. Gates' testimony of disabling headaches and back pain.

Mr. Gates also argues that the ALJ should have considered his Grover's Disease when determining how much time Mr. Gates would need to miss work. Mr. Gates contends that he would miss more than one day of work per month if he sought phototherapy treatment for his Grover's Disease. Mr. Gates testified that phototherapy treatment would require him to obtain 3 weekly doses of light treatment that would last 3-4 hours. (R. 272). According to Mr. Gates, phototherapy treatment for skin conditions involves an initial 12-15 weeks of light treatment

---

[1] Mr. Gates makes much of the ALJ's statement that "there is reason to conclude that the headaches are responsive to treatment and he just needs to obtain it." (R. 21). Mr. Gates argues that the ALJ did not follow the applicable rules and regulations governing when a disability claim can be denied for failure to follow prescribed treatment. Reviewing the ALJ's decision as a whole, the Court agrees with the Commissioner that the ALJ did not deny Mr. Gates' disability claim for failure to follow prescribed treatment. Despite the ALJ's unfortunate choice of words, it is clear that he made the statement because he did not believe Mr. Gates' testimony regarding the severity and frequency of his headaches.

occurring 2-3 times per week. Pl's Memo. at 9. The Commissioner argues that the ALJ did not err in failing to consider the frequency of work absences that would be necessitated by phototherapy treatment of Mr. Gates' Grover's disease because Mr. Gates has declined treatment for Grover's disease. According to the Commissioner, the issue is irrelevant and there was no reason for the ALJ to take it into account when determining Mr. Gates' number of work absences per month.

The Commissioner's citation to page 271 of record does not support his assertion that Mr. Gates has declined phototherapy treatment. At the hearing, Mr. Gates' attorney explained that Mr. Gates had recently begun the light treatments, and Mr. Gates did not testify otherwise. (R. 255; 272-73). Rather, Mr. Gates testified that he was offered medication or phototherapy for his Grover's disease and he disfavored the medication because it can cause liver damage. (R. 272). The Commissioner offers no other justification for the ALJ's failure to consider Mr. Gates' phototherapy treatment in determining work absences. Accordingly, on remand, the ALJ shall consider the frequency and duration of phototherapy treatment for Mr. Gates' Grover's disease in determining the number of work absences per month and his RFC.

Mr. Gates raises an additional objection to the ALJ's RFC determination. Mr. Gates argues that the ALJ's push, pull, and reaching limitations were not based on medical evidence and therefore not supported by substantial evidence. The ALJ found that Mr. Gates could push and pull 20 pounds and use his left upper extremity two-thirds of the workday for reaching. (R. 20). The ALJ determined Mr. Gates' push, pull, and reaching limitations by using the medical evidence, the opinion of Mr. Gates' physician, the opinions of the state agency physicians, and Mr. Gates' own testimony. The ALJ noted that an x-ray of Mr. Gates' left shoulder performed on June 28, 2004 showed moderate acromioclavicular separation that

was thought to be chronic. (R. 20). The ALJ also noted that an MRI of Mr. Gates' left shoulder performed on April 4, 2005 found "a focal area of high signal in supraspinatus tendon suggestive of tendonopathy." (R. 21). The only RFC for Mr. Gates was provided by the state agency physicians. Dr. Kim concluded that Mr. Gates had no push, pull, and reaching limitations. (R. 196, 198). Dr. Bone affirmed Dr. Kim's assessment. (R. 105). Mr. Gates' physician also did not suggest any limitations on his ability to push, pull, or reach. In fact, on June 29, 2005, Mr. Gates' physician reported that Mr. Gates had good results with physical therapy for his left shoulder and that his left shoulder pain was resolved. (R. 21, 221). Mr. Gates relies primarily on his own testimony to establish his push, pull, and reach limitations. Mr. Gates testified that contrary to his physician's statement, he still has pain in his left shoulder. (R. 21, 264-66). Mr. Gates said he also experiences numbness in his left hand. (R. 280-81).

The push, pull, and reaching limitations found by the ALJ are supported by substantial evidence. The ALJ properly reconciled conflicting evidence. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000) (holding it is the ALJ's responsibility to weigh the evidence, resolve conflicts, and make independent findings of fact). The ALJ did not accept the state agency physicians' opinions that Mr. Gates had no pushing, pulling, and reaching limitations. Rather, the ALJ "listened to" Mr. Gates' testimony and considered the MRI of Mr. Gates' left shoulder which was not available for the state agency physicians to review. The ALJ's conclusion that Mr. Gates had the ability to push and pull 20 pounds and use his left upper extremity two thirds of the workday for reaching was more favorable to Mr. Gates than the RFC found by the state agency physicians. The state agency physicians found that Mr. Gates had no push, pull, or reaching limitations. Mr. Gates' physician opined that Mr. Gates' left shoulder pain was resolved. Mr. Gates testified that he still has left shoulder pain despite exercise and pain

medication. The ALJ discounted the state agency physicians' opinion in light of the April 2005 MRI and Mr. Gates' testimony. The ALJ found Mr. Gates' testimony regarding the intensity, duration, and limiting effects of his impairments not entirely credible. Having determined that Mr. Gates' credibility was questionable, it was reasonable for the ALJ to conclude that Mr. Gates' ability to push, pull, and reach was not unlimited as suggested by the state agency physicians but he was not as limited in his ability to push, pull, and reach as his testimony suggested.

The Court rejects Mr. Gates' argument that the ALJ failed to indicate what medical evidence supported his push, pull, and reaching determination. The ALJ properly considered the relevant medical and non-medical evidence when making his push, pull, and reaching determination. Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001). As the ALJ found, the medical evidence supports the conclusion that Mr. Gates suffers from a shoulder impairment which could reasonably be expected to produce the alleged symptoms. The objective medical evidence does not indicate to what extent Mr. Gates' shoulder impairment limits his RFC. Instead, Mr. Gates relied primarily on his testimony to establish his push, pull, and reaching limitations. Mr. Gates did not have a treating physician opine as to his push, pull, and reaching abilities. Mr. Gates' treating physician's most recently opined, after the tendonopathy diagnosis, that Mr. Gates had good results with physical therapy and that his left shoulder pain is resolved. Mr. Gates' treating physician placed no limitations on Mr. Gates' ability to perform work-related activities with his left shoulder or otherwise.

### C. Social Security Ruling 96-7p

Mr. Gates contends that the ALJ failed to properly analyze his credibility under Social Security Ruling 96-7p. In making his credibility determination, the ALJ gave some weight to

Mr. Gates' complaints. With respect to Mr. Gates' credibility, the ALJ stated:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. As I noted above, there are significant inconsistencies that call into question the claimant's overall credibility.

(R. 22). Mr. Gates argues that the ALJ's credibility determination was insufficient under SSR 96-7p because the ALJ did not mention the medications he takes, did not address the aggravating and precipitating factors of plaintiff's symptoms, and did not indicate how his daily activities were inconsistent with his testimony.

SSR 96-7p states that ALJs must provide "specific reasons" for a credibility finding. ALJs must also evaluate the credibility of the claimant's testimony about his symptoms in light of seven factors: (1) daily activities, (2) the location, duration, frequency, and intensity of pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of medication, (5) treatment, (6) other measures used to relieve the pain, and (7) other factors concerning functional limitations. SSR 96-7p. The reasons for an ALJ's credibility finding must be specified, not implied. Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003). An ALJ's credibility determination is entitled to "special deference" and will be reversed only if it is "patently wrong." Scheck, 357 F.3d at 703; Powers, 207 F.3d at 435.

The ALJ's credibility determination did not fully comply with Social Security Ruling 96-7p. The ALJ did adequately cover the various medications Mr. Gates has taken and is taking in his decision. The ALJ noted that Mr. Gates was prescribed Allegra for allergies, medication for cluster headaches, and Ultram for shoulder pain. (R. 20, 21). The ALJ also noted that on December 30, 2004, Mr. Gates reported that Tramadol was helping his shoulder and back pain. (R. 21; 203). The ALJ stated that on June 29, 2005, Mr. Gates again reported

that Tramadol had helped his low back pain. (R. 21). Finally, the ALJ noted in his decision that Mr. Gates testified that his pain medication helps relieve his left shoulder pain. (R. 21; 264-65). The ALJ considered the effectiveness of the medication Mr. Gates is taking for his headaches. (R. 21). The ALJ noted that Mr. Gates "testified that his headaches have grown worse and the medicine he was taking for his headaches is less effective. He states that the headaches reach the point where he needs to lie down in a quiet room two to three times per week, sometimes all day, to deal with the problem." Id. The ALJ discounted Mr. Gates' testimony about the frequency and severity of his headaches because of his inconsistent testimony. The ALJ asked Mr. Gates why he had not addressed the effectiveness of the pain medication with his doctor. (R. 270). Mr. Gates first stated that the wait time was too long. (R. 270-71). Then, he said he already has prescriptions from Dr. Clark. (R. 272). Next, he testified that he was looking for a different doctor because Dr. Clark was "not addressing the issues that [he was] dealing with as far coming to try to get disability." Id.

The ALJ also considered precipitating and aggravating factors that affect Mr. Gates' symptoms. The ALJ found that Mr. Gates needs to avoid temperature extremes secondary to his heart condition and avoid dust, chemicals, and fumes secondary to his heart problems and headaches. (R. 20). Because Mr. Gates does not indicate what additional precipitating and aggravating factors the ALJ allegedly ignored, the Court finds this challenge to the ALJ's credibility determination unpersuasive.

The Court agrees with Mr. Gates, however, that the ALJ did not adequately consider Mr. Gates' testimony regarding his daily activities. In assessing credibility, an ALJ may rely on inconsistencies between the claimant's daily activities, subjective complaints, and the medical evidence. Zurawksi v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must, however, explain why the evidence is inconsistent. Id. Here, the ALJ listed Mr. Gates' daily

activities (R. 22), but he did not explain why he believed Mr. Gates' description of his daily activities were either consistent or inconsistent with his complaints of pain. On remand, the ALJ shall analyze Mr. Gates' daily activities as they relate to his allegations of pain as required by SSR 96-7p.

### D. Step 4 - Past Relevant Work

#### 1. Duration Requirement

Mr. Gates argues that the ALJ erred in finding that he could return to his past work as an office clerk performing data entry. Specifically, Mr. Gates contends that his 90-day position as an office clerk doing data entry for the State of Illinois does not qualify as past relevant work because it "lasted such a short period of time" and because he "did not learn to perform it competently." Pl's Brief at 11. "Past relevant work" is defined as substantial gainful employment that a claimant had performed, in the not too remote past, and long enough to have learned how to do it. Smith v. Barnhart, 388 F.3d 251, 252 (7th Cir. 2004). The duration requirement is satisfied if the worker "learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work." SSR 82-62.

Here, substantial evidence supports the ALJ's conclusion that Mr. Gates' 90-day position as an office clerk doing data entry lasted long enough for him to learn how to do it. Mr. Gates explained that he got the office clerk position through a temporary agency and completed the 90-day assignment. (R. 258). Mr. Gates testified that he entered numerical information into a computer and performed the job in the same manner as other persons placed through the temporary agency. Id. Mr. Gates worked 36 to 40 hours per work during the 90-day assignment. Id. Based on Mr. Gates' description of the position, the VE classified the office clerk job as sedentary and unskilled. (R. 282). By definition, unskilled work is "work

which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Mr. Gates does not challenge the VE's characterization of this past work as unskilled. Although Mr. Gates testified that he did "not really" learn the job because he did not know how to type and was only inputting numbers, there is no evidence that he did not competently perform any of the duties in that position. (R. 258). Mr. Gates successfully completed the 90-day assignment. Based on the very simple demands of the job as described by Mr. Gates and Mr. Gates' completion of those demands, the ALJ did not err in concluding that Mr. Gates performed work as an office clerk doing data entry long enough to qualify as past relevant work. See Dudley v. Secretary of Health and Human Services, 816 F.2d 792 (1st Cir. 1987) (holding three months work as a labeler was sufficient to constitute past relevant work given the straightforward and uncomplicated nature of the work); Feliciano v. Sullivan, 1990 WL 118053 (E.D. Pa. Aug. 10, 1990) (three months work as a cleaning lady and three months work as a dietary aid constituted past relevant work).

### 2. Social Security Ruling 82-62

Mr. Gates contends that the ALJ failed at step four to compare his RFC with the demands of his past relevant work. At step four, the ALJ examines the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). "Even if the claimant is unemployed and his disability is severe, an ability to perform the claimant's previous job disqualifies him from receiving [disability insurance benefits]." Nolen v. Sullivan, 939 F.2d 516, 518 (7th Cir. 1991). In Strittmatter v. Schweiker, 729 F.2d 507 (7th Cir. 1984), the Seventh Circuit held that "an ALJ cannot describe a claimant's job in a generic way–there, 'sedentary'–and conclude, on the basis of the claimant's residual capacity, that she can return to her previous work." Id. Rather, "[t]he ALJ

must list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks." Id. Then, the ALJ must give "careful consideration" to "the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work." SSR 82-62.

The ALJ found that Mr. Gates has the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for about six hours in a workday; sit for about six hours; push and pull 20 pounds; use his left upper extremity two thirds of the workday for reaching; miss one day per month of work secondary to low back pain and headaches; needs to avoid temperature extremes secondary to his heart condition; and needs a sit/stand option where he can alternate positions at least one time per hour. (R. 20). The vocational expert (VE) determined that the duties Mr. Gates described in his testimony were analogous to that of an office clerk. (R. 282). The VE described Mr. Gates' past work as an office clerk as sedentary and unskilled. The ALJ then concluded that Mr. Gates could return to his previous work as an office clerk, noting that as an office clerk he "sat throughout the workday and performed no lifting at all." (R. 22).

Although the ALJ's discussion here was not as faulty as the ALJ's in Strittmatter, the ALJ did not make the required "specific findings of fact" regarding Mr. Gates' past work in relation to his reaching and sitting limitations as required by SSR 82-62. SSR 82-62 requires the ALJ to make findings of fact regarding the claimant's RFC, the demands of past relevant jobs, and whether the claimant's RFC would permit a return to a past job. In assessing Mr. Gates' RFC, the ALJ concluded, among other things, that Mr. Gates needs a sit/stand option where he can alternate positions at least one time per hour and can only use his left upper extremity two thirds of the workday for reaching. The ALJ considered only the sitting and

lifting demands of Mr. Gates' prior job as an office clerk–sitting throughout the day and no lifting. The ALJ failed to make the required findings with regard to the reaching demands and sit/stand flexibility of Mr. Gates' past office clerk job. See Strittmatter, 729 F.2d at 509 (holding that the ALJ "was required to determine the physical demands of the particular type of sedentary work that this claimant had done and then compare those demands to her present capabilities."). The lack of findings regarding the reaching demands and sit/stand flexibility of Mr. Gates' past work as an office clerk is particularly important in light of the ALJ's finding that Mr. Gates is limited to work with a sit/stand option where he can alternate positions at least one time per hour and can only use his left upper extremity two thirds of the workday for reaching. The ALJ erred in failing to inquire into and discuss the reaching demands and sit/stand flexibility of Mr. Gates' office clerk job or a general office clerk job. On remand, the ALJ shall make additional findings on the claimant's capability to do his former work or a general office clerk job.

### 3. Social Security Ruling 00-4p

Mr. Gates has another successful argument. Mr. Gates argues that the ALJ failed to follow SSR 00-4p by not asking the VE whether her testimony was consistent with the Dictionary of Occupational Titles (DOT). "SSR 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether the testimony is consistent with the Dictionary of Occupational Titles." Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006).

Here, the ALJ's Step 4 finding was based on Mr. Gates' ability to perform the office clerk job "both as he actually performed and as it is generally performed." (R. 22); see SSR 82-61 (stating "a claimant will be found 'not disabled' when it is determined that he or she retains the RFC to perform (1) the actual functional demands and job duties of a particular

past relevant job *or* (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy."). The Commissioner argues that SSR 00-4p does not apply in this case and any inconsistency between the DOT description of the office clerk job is irrelevant because the ALJ found that Mr. Gates could perform his actual past relevant work as an office clerk. The Commissioner would be right regarding the applicability of SSR 00-4p if the ALJ's determination that Mr. Gates could perform his actual work as an office clerk was supported by substantial evidence. Because the ALJ's determination that Mr. Gates retained the ability to perform the office clerk job as he actually performed it is not supported by substantial evidence as explained above, SSR 00-4p is applicable to this case.

Although the ALJ found that Mr. Gates is capable of performing the office clerk job as it is generally performed in the national economy, he neglected to ask the vocational expert whether her testimony conflicted with the DOT and if so, whether there was a reasonable explanation for the conflict. As a result, the Court cannot find that substantial evidence supports the ALJ's step-four finding that Mr. Gates could perform the office clerk job as it is generally performed. If on remand the ALJ finds that Mr. Gates can perform any of his past relevant work as generally required by employers throughout the national economy, he shall comply with the requirements of SSR 00-4p.

### III. Conclusion

The above collection of errors warrants a remand for the ALJ to reevaluate Mr. Gates' credibility, redetermine Mr. Gates' RFC, and conduct a new Step 4 analysis. Plaintiff Tony Gates' Motion for Summary Judgment [19] is granted in part and denied in part. Defendant Commissioner of Social Security's Motion for Summary Judgment [27] is granted in part and denied in part. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is

reversed, and this case is remanded to the Administration for further proceedings consistent with this Opinion. The Clerk is directed to enter final judgment in favor of the Plaintiff and against the Defendant in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**E N T E R:**

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: October 9, 2007**